This is our third case of the morning, Bartlow Bros. v. City of Rushville, 4090784. For the appellant, Ms. Burkett, for the appellee, Mr. Ader, you may proceed. Did I pronounce that correctly? You certainly did. Good morning, Your Honors Counsel. I'm Laura Lee Burkett. I'm here for Bartlow Bros., Inc. Essentially, there are two discrete issues before the court this morning. The first is, is the option contained in the lease between Bartlow Bros. and the City an extension? And if so, did the City violate Section 11-76.1-1 of the Municipal Code when it exercised it? And I'm just going to refer to that as 1176. It's kind of cumbersome. The trial court's decision on those two issues is Review de Novo. The City brought a Section 2615 motion on Bartlow Bros. Count 1 for declaratory action. Of course, that's Review de Novo. But the trial court did not dismiss Count 1 because it examined the pleadings and found them deficient. Nor did the trial court dismiss Count 1 because it did not present a justiciable claim. Instead, the trial court's decision rested on the construction of the The trial court's decision rested on construction of the statutes governing that lease. It's our position that the trial court wrongly concluded, excuse me, allergies, as a matter of law, that there were two leases. But at any rate, that does not change the standard of review, which is, of course, de novo. So the question before the court is, whether the option is construed as a renewal, which would give the City rights to a new lease for 20 years, as the trial court held, or whether it should be construed as an extension, which would give the City the right to extend the lease on the same terms and conditions, and the exercise of which would create, as a matter of law, a present demise of the full term, or two 20-year terms of 40 years. So it's a present demise of the original and extended term. Is my understanding correct that the argument that you're raising is premised upon the application of Section 11-76.1-11, 1176? Yes, it is. The reason I ask that is, it seems to me that the question is whether that section applies at all, since it refers to the consideration for such purchase or lease to be paid in annual installments, and you didn't have annual installments here. We did not. There were not annual installments. Why does the statute apply? I believe that the intention of the legislature in that section was not the annual installment, but the limitation on 20 years. And that's something that the City has pointed out many times. You're right, counsel, but the problem is how can we agree with that argument without literally reading out of the statute the phrase, in annual installments? Because the court is not to construe a statute in such a way as to render it a nullity. And if all a City had to do was to pay monthly to avoid a 20-year prohibition, there is no such thing as a 20-year prohibition. Any City could avoid that at any time. Why is that language there? What did the legislature mean? I am not sure what the legislature meant by that, to tell you the truth, Your Honor, but I know that when it does refer to periodic installments, there is also a 20-year prohibition or a 20-year limitation. I think that that language, if construed in the way that the City suggests and the court is now questioning about, simply would allow any City at any time to avoid the 20-year limitation. And I don't think that's supposed to be the effect, and I certainly could find no case that went to that. Bartlett Brothers argues that the option extension results in a present demise of a 40-year term, and so it does violate 1176. We rely on J.B. Stein, which is a second district case, and two cases following that. They all examine lease language to determine if there is an extension or renewal. The language in this lease fits squarely within that considered to be an extension for several reasons. First, it's an extension on the same terms, same conditions, simply continues. The option requires written notice prior to the termination of the lease, specific time, specific manner. The City complied with that notice requirement. There was no execution of a new lease required. The lease refers twice to an option to extend, although there is a reference to a renewal. Only the City, as lessee, had the right to exercise the option, and there is no evidence that the parties intended to create a new lease. In fact, that's quite to the contrary, and without presenting evidence, which is not necessary because this Court can take judicial notice of the City's ordinance with regard to the exercise of the option. The City itself states that it is the absolute necessity of extending the lease. The operative portion of the ordinance states that City officials are hereby authorized to execute an extension of the City's lease on the same terms and conditions. I think that when you review the factors in view of J.B. Stein, you must conclude that this option language provided an extension, not a renewal. There is no new lease, as the trial court found. If it's an extension, there is a present demise of the entire term, which is 40 years, and it's our contention that that is violative of 1176, notwithstanding the language with regard to installments. If it is violative, and that's our position, then the City's action, the City's exercise, was ultraviaries. Any governmental action that is outside the grant of authority for a municipality that is given to it by the legislature is ultraviaries and is void ab initio. So from the moment they exercised that option, that lease became void, and essentially the City sits on land to which it has no right. The City argues that it's section 11-140 that controls, to the exclusion of section 11-76, and then argues that even if the option is an extension, there's no violation of the municipal code, because there is no prohibition in section 11-140 with regard to a 20 year term. That position is incorrect for several reasons. First, 11-140 and 11-76 are both in They are both concerned with the manner of acquisition of property in order to serve those corporate power and functions. Those two sections are paramateria, and they need to be construed together. And in fact, sections of the code should be construed together wherever possible in a harmonious manner to give effect to both. And that's very possible here. You can certainly read that a City has the right to acquire property for an outlet sewer under a lease for 20 years or some other transaction. The City argues that 11-140 is more specific and controls over the general 11-76. It's our position that that is also incorrect. 11-140 addresses the City's jurisdictional authority to acquire property outside the 11-76 addresses the City's leasing authority and limits it to terms of 20 years. So no one is saying that they could not acquire land outside the City limits, which is what 11-140 provides. So that's not the dispute. The dispute is whether or not the City exceeded its authority to lease, and we contend that it does. 11-76 controls that question. Finally, Barlow Brothers Alleged believes that while 11-140 gives the City an extra City limit jurisdictional authority to acquire property, there's nothing in there that says that it can acquire it by lease. 11-140 authorizes the acquisition by purchase, gift, or otherwise. The City argues that it is historically established that otherwise means lease. We distinguish the cases that the City relied on in our brief, and we cite several sections of the Municipal Code where the legislature used lease and otherwise in the same sentence. Lease can't possibly be interchanged. You just can't conclude that lease always means otherwise and otherwise always means lease. They're not interchangeable. The legislature used lease when it wanted to, and we cite the 2 section where it used otherwise, but did not use lease, but referred to a lease later in the section. So if the city meant, or if the legislature meant that a City could lease property outside of its City limits for outlet sewers, it would have said so. In summary, our argument is that the option language gave City the right to extend the lease, not the right to a new lease. The exercise of the option to extend resulted as a matter of law in a present demise of 40 years. That present demise is violative of Section 1176, which limits municipal leases to 20 years, and it's an ultraviarious act that is void ab initio. The result is that the City has no present right in the lease, and Bartlow Brothers cannot control its own property because the City does not recognize that. We urge the court to reverse the trial court and find that there was an extension and that that extension violated 1176. Are there any questions, Your Honor? Thank you, counsel. May it please the court. This, as you've seen from the briefs, there's a major underlying dispute, in a sense, in the way the briefs have been written and the way the arguments have been made. The decision below was on a 2615 motion to dismiss. So this is not the gateway to a general argument about the law and what various sections there may or may not be in the municipal code. It's about what was actually pleaded, what were the facts that were pleaded, what does the lease that's attached actually say, what is the legal theory that is expressed by the allegations. And that binds the parties. As far as the factual allegations, when we make the motion to dismiss, we have to take those as admitted. And obviously, the plaintiff cannot leave one case and then try to argue another. So to begin with, there are two pillars on which Count 1 is resting. The first is the 11-76.1-1.1. And the other is an allegation that this lease is an extension, rather, or the option was for an extension and not for a renewal. Both of those fail on the allegations actually contained in the complaint and in the terms of the lease and the actual language, 11-76.1-1. First of all, as the court has already recognized, 11-76.1-1, by its own terms as chosen and enacted by the legislature, is limited to leases where the consideration is paid annually. The legislature did not do something that it didn't choose to do. You know, we can't assume that they engaged in some sort of lunacy and said something they didn't mean. And courts, which is actually in Bartlow's brief at some point, they point out the fact that courts are not in a position to say that the legislature did not mean what it said. That courts can't add to a statute, they cannot limit a statute, they cannot delete from a statute. And as Bartlow's counsel said to the circuit court in the argument of the first motion to dismiss the First Amendment complaint, at page 41 of the transcript thereof, where she said this is plain language, it's unmistakable, basically there's no problem with the section. And she said that after reading parts of the section, including the fact that the payments had to be made at consideration paid annually rather than in any other period. So they arrested their case deliberately and knowingly on a section that does not apply. Now there are other sections in the Municipal Code. There's a section, all of which were known, by the way, to Bartlow from the argument on the motion to dismiss the original complaint and also from the motion to dismiss the argument thereon, the First Amendment complaint. They were made very aware of 11-61-3, which applies to leases that have a consideration payable in stipulated intervals without defining what those intervals are. They could be weekly, monthly, whatever. Which shows that the legislature had another section where they dealt with leases where the consideration was not paid annually. They also were made aware of section 11-140-1-3, which they made reference to in their amended complaint. Now had they realized that they had made a mistake and had they desired, for whatever reason, had they desired to plead under 11-61-3 or some other section, they could have asked the court for leave to further amend. They could have since they knew what these various terms were and they knew what they had put their count on, very clearly four square. They did not do so. In 304A language, on count one, and that is why we're before the court at this time. And they chose, it's their choice, they're the plaintiff, not to amend to allege 11-61-3. So that is where we are. That is what they rested their count on, full square, deliberately, knowingly, and on a 2-615, the only issue is the legal sufficiency of that complaint as pleaded. So already we have, basically, a ground for dismissal of count one. The first judge found that 11-76.1 did not apply when she dealt with the original complaint. As you know, there was a new judge that came in, ultimately, to hear and rule on the first amended complaint. She chose not to rule on that basis, but as your honors know, the appellee may support a correct ruling of the correct outcome of the court on any basis appearing in the record. And this, we think, is pretty undeniable ground to affirm the dismissal of count one. Is there any relevance to the provisions of section 11-140? Well, 11-140, we would argue, under other circumstances, if there were a 20-year limit that was alleged and applied, we would say that 11-140 does apply, first of all, because otherwise does cover leases. It's true because it said otherwise. We set forth in our brief all the other occasions when the legislature dealt with the other words that are in the string before otherwise and included as part of that meaning or as part of that grouping, part of that society, a lease. So we say it definitely, number one, applies. But number two, if you look at their complaint, there is a paragraph that says that we doubt whether 11-140-3 applies. They do not actually allege that it does not apply. In fact, their next paragraph goes on to argue as if it does apply. And since they didn't ask or rest their count on the invalidity or inapplicability of 11-140-1 or 3, we would say that isn't really part of the complaint and before the court in any case. Also, in terms of 11-140-1, there's no cross-reference by the legislature. There's no evidence there that the legislature meant that there would be some time limitation in that particular provision and overlooked it or thought people would be smart enough to look would have put it in there or they would have cross-referenced to another lease provision. There is such a thing as I believe the United States Supreme Court called it a negative pregnant where Congress may in fact not put something in because it doesn't want it in and it's not up to the courts to import it from some other section that if they didn't put it in, they didn't want it to be limited. And when you're dealing with a or can be, it doesn't have to be, but it can be and the other things in the stream are to take it by condemnation to purchase and so forth, the legislature could very reasonably have said there's no reason to unnecessarily limit the time for this particular use. And then what they want to do is they want to cherry pick from each of these sections. They look at 11-76.1-1 in isolation, but actually that had other sections attached to it. It deals with a backdoor referendum. It deals with notice. There are other sections that are part of that statutory provision. And when you look at 11-140, there are other things that have to do in the way of publication. It talks about a special assessment. It talks about a special tax. So when you put these sections that they want to cherry pick back into the context of the full statute, the statutes are not in perimeteria because each one has its own notice and what happens in terms of voting or how it's paid for. And therefore, they clearly are separate. And under Section 1-9-1 of the Municipal Code, they are alternatives. They don't limit one another. So I think that takes care of the fact already that the dismissal of Count 1 should be affirmed. But if we don't rest there, then the question is what did they actually allege in their complaint? They want to make a lot of trying to make this into a 40-year lease instead of a 20-year lease with an option for another 20-year lease. And of course, that doesn't make any sense if 76.1 doesn't apply. But just going on for the sake of argument, the fact of the matter is that they, if you look at their actual complaint as alleged, I think it's section, I think it's paragraph 3, says it's a 20-year lease. They allege that right in their complaint. I think it's in paragraph 3. I believe it's in paragraph 7 of their complaint. I said lease on that complaint. If it's paragraph 7 of the complaint, they talk about there being an option for one additional term. Not a continuation of a term, one additional term. If you look at their complaint some more, Count 1, what they're concerned about is the exercise of the option. They say, well, it's the option exercise and the result of that option exercise, which is ultra-duries. Well, that doesn't make any sense in this context because if you look at their own case of J.B. Stein, J.B. Stein distinguishes by quoting the restatement and by its own, I believe, or citing another case, I believe, that the difference between, and this is a point that they make a lot of without realizing its legal significance, they say, well, an extension is a present demise. It is not a covenant for a future demise. If, in fact, it's a present demise and as the real estate or the restatement states, as cited in J.B. Stein, says, in a sense, the option is you have a longer lease and the option isn't to extend it. The option is to get out. Then that means that, and we, of course, don't say that this was a 40-year lease or in any way beyond 20 years, and I'll show in the lease itself that the terms say it isn't, but if we were to accept their theory, just for argument, it runs on the rocks because their complaint is about the exercise of the option, not about the fact now 20 years later that the original lease was ultra-heres and extended beyond 20 years, which is the only thing they could do if this were an extension. Since an extension is a present demise and always was, in a sense, a term of the full lease, then at the time it was executed in 1988, it would have had to have been a 40-year lease. Stoen argues that it was. They don't allege that it was. They specifically say in paragraph 3 that it was a 20-year term, and so what you have is not an extension where the option is essentially to get out. This is a 20-year lease which terminates, and there was an option for a future, a covenant for a future term of another 20 years, which is what the city picked up. They try to say, and another proof of the fact that they're not alleging that the original complaint was more than 20 years, is that they don't rely on the lease to claim ultra-heres. They rely on inferences from evidence and so forth that they've alleged in the complaint, and they've also argued it here that, oh, look at the ordinance or whatever. They must have intended to be getting around the 20-year limit, but it doesn't say the lease gets around the 20-year limit. They have to fall back on inferences. Well, if you have an express contract, you can't have an implied contract. You don't have inferences. The contract is what the contract is, and clearly it's a 20-year contract, not a 40-year contract. It was a new contract for 20 years on the option, not some extension of a pre-existing extension with a constantly occurring, unbroken demise. And then you look at the lease itself, and the lease in the introductory paragraph says that it starts on a certain date. It didn't start on a numerical date, because it started when some notice was given to a contractor, so there was a little give there. But later on in that same paragraph, it says, and to end 20 years after it began, or some language to that, but it specifically said ending 20 years blank, after it started or its inception. Then you look at the next term that deals with years very clearly. It's paragraph 3, which deals with the payment of real estate tax, and it says to pay all real estate taxes for each year during the term of this lease, which may be levied or assumed on the premises, and this is the important language, not to exceed 20 years. So that agrees with the introductory paragraph that this is a 20-year contract lease. Then in paragraph 9, it talks about a further term of 20 years, and it uses the word renew in the lease, and it actually has, I think there's another word in there which I cannot think of right now that also goes with the idea that it's a new lease, and not any sort of extension or continuation of the original lease. Now, therefore, and of course we know that the lease itself is part of the complaint for all purposes. In fact, since the complaint rests on it, it actually prevails over inconsistent allegations occurring in the complaint. So the complaint doesn't allege it, the lease doesn't support it, and so if 20 years were important, which it's not because 1176.1 doesn't even apply, it wouldn't be in violation because what happened is that you had a 20-year lease, that 20-year lease ended, there was an option or promise for a future lease of 20 years, and they executed it. They chose to pick up the option. Now, there's some argument here that, well, you know, again, this inference, well, if they picked it up, and if you look at the ordinance, it means that they meant to get around the 40-year or 20-year limit. But actually, what it shows are two things. Number one, we all know that legislative history by a later legislature, and that's where the City Council is, saying what a prior legislature meant by enacting a law is no legislative history at all. And here they're not even trying to ascribe what the first City Council meant or did. The first City Council did what it did. But 20 years later, the second City Council had a right to decide under this lease whether it would find some other answer or whether it wanted to continue in place. And it decided it wanted to be in place. What it decided 20 years later can't in any way be ascribed to the first City Council or to the drafting of the lease 20 years earlier that there was some sort of intent. They couldn't know what a City Council would do 20 years later in terms of the needs. And by voting at that time, they fulfilled, even though 1176.1 doesn't apply in any circumstance, if it did apply, what was its purpose? This is not a lease case, really. This is a statutory case. This is not between private parties. This is with a public party. What did the legislature intend? The legislature intended that a City Council couldn't bind for longer, one City Council couldn't bind for longer than 20 years. But every 20 years, the public has a right to decide whether this is the way they want to go and continue that way or to do something different. And so that purpose, if there is a purpose here, was satisfied because the city actually did make a second determination 20 years later, decided that this is a good arrangement, this is the way we want to continue. That City Council could have walked away, that City Council could have tried to renegotiate. It had all the freedoms of the first City Council, except that the landlord couldn't hold them over a barrel because they were now stuck in a particular situs and the landlord could take advantage of that, which the legislature would never intend in the first place because that would be an absurd consequence. So what happened here is they did what they, after 20 years, what they were allowed to do, that is decide anew. They did decide anew, they were promised a new lease, they have a new lease, and the court was right to dismiss Count 1 and should be affirmed. Thank you very much. Thank you, Council. Rebuttal? Well, the City and Bartlett Brothers agrees on one thing. A lagoon system is a fairly permanent thing. That's the quote from Council. And it is a very permanent thing. This is a city that found it absolutely necessary to extend the lease. The rights that the city had were not driven by anything but the lease. The new City Council couldn't decide anything, couldn't extend its lease if the right wasn't contained in the original lease. The right contained in the original lease is not an option to renew or have a new lease, but an option to extend the original lease on all the same terms and all the same conditions. So the not to extend past 20 years or not to exceed 20 years doesn't make any difference after it's extended. The point is that the lease could be extended and not renewed. It is, I think that when you look at the lease language itself, the option to renew very clearly sets, or to extend, the option language very clearly sets forth an option to extend rather than to renew. This, finding that this is an option to extend does not result in the first lease being void ab initio as the City is now contending. Rather it is the exercise of the option that results in the present demise. So had the City never exercised its option to extend, there would never have been a present demise of 40 years. It was on the exercise of the option that that occurs. I would like to just also point the court to the ordinance. It's not Bartlow Brothers that erected this case on 1176. It's the City that erected its ordinance on 1176. And that is what Bartlow Brothers contends is violative of the Municipal Code. The City's heading of the ordinance talks about 1176 and all through the City's ordinance it speaks to the necessity of extending the lease. Therefore, Your Honor, it's our belief that there is a 40 year demise here, that 1176 prohibits a lease longer than 20 years, and that the City is wrongfully in possession of private property.